**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

LISA A. SMITH,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner,

    Defendant.

CIVIL ACTION NO.: 2:15-cv-44

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Richard Furcolo ("the ALJ" or "ALJ Furcolo") denying her claim for period of disability and disability insurance benefits. Plaintiff urges the Court to reverse the ALJ's decision and award her benefits or, in the alternative, to enter judgment in Plaintiff's favor but remand for further proceedings to supplement the ALJ's report. Defendant asserts that the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision.

## **BACKGROUND**

Plaintiff protectively filed an application for disability benefits on July 23, 2013, alleging disability beginning on March 11, 2013, due to affective and mood disorders, anxiety-related disorders, and narcolepsy. (Doc. 1, p. 1; Doc. 11, p. 4.) After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On August 7, 2014, ALJ Furcolo conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified. (Doc. 8-2, p. 25.) James Waddington, a vocational expert, also appeared at the

hearing. (Id.) ALJ Furcolo found that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* ("the Act"). 42 U.S.C. §§ 423 & 416(i). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Doc. 1, p. 1; Doc. 8-2, p. 2.)

Plaintiff, born on February 24, 1970, was forty-four (44) years old when ALJ Furcolo issued his final decision. She has a General Education Diploma and has completed some college. (Doc. 8-2, p. 47; Doc. 11, p. 4.) Plaintiff's past relevant work experience includes employment as an attendant at a tanning salon, general clerk, credit clerk, receptionist, appointment clerk, and sales clerk. (Doc. 11, p. 6.)

## DISCUSSION

### I.  The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments under the "severity regulation." 20 C.F.R. §§ 404.1520(c) & 416.920(c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is considered severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently

2

severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step. At step four, a determination is made as to whether the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of March 11, 2013, through the date of ALJ Furcolo's decision on September 22, 2014. (Doc. 8-2, p. 27.) At Step Two, the ALJ determined that Plaintiff has major depressive disorder, bipolar disorder, anxiety disorder, and borderline personality disorder, conditions considered "severe" under the "severity regulation," 20 C.F.R. 404.1520(c). However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment under the Regulations. (Id. at p. 28.) The ALJ found that Plaintiff had the residual

3

functional capacity, through the date of his decision, to perform a full range of work at all exertional levels, except with the non-exertional limitation of doing simple, routine tasks. (Id.) At the next step, ALJ Furcolo noted Plaintiff was able to perform her past relevant work as a general clerk as it is actually and generally performed. (Id. at p. 33.)

## II.    Issues Presented

Plaintiff contends that the ALJ's RFC finding is erroneous because it did not include all aspects of the consultative psychological examiner's opinion. (Doc. 11, pp. 10–12.) Plaintiff also contends that substantial evidence does not support the ALJ's credibility finding. (Id. at pp. 12–18.) Finally, Plaintiff alleges that the ALJ erred in finding that she could perform her past relevant work. (Id. at pp. 7–10.)

## III.   Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a

4

scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## IV. Whether the ALJ's RFC Finding is Erroneous

Plaintiff asserts that the RFC assessment is erroneous because ALJ Furcolo improperly afforded weight to the opinion of Dr. William Corey, the consultative psychological examiner, without incorporating "all of the limitations the expert imposed." (Doc. 11, p. 10.) Specifically, Plaintiff contends that the ALJ did not account for Plaintiff's "moderately impaired" abilities to sustain attention for long periods or handle workplace stress. (Id.) Furthermore, Plaintiff argues that the ALJ's limitation to "simple, routine tasks" is not enough to address Dr. Corey's finding of moderately impaired ability to handle workplace stressors. (Id.) Plaintiff also contends that the ALJ did not provide a "narrative discussion describing how the evidence supports each conclusion." (Id. (citing SSR 96-8p).)

Defendant responds that the ALJ did in fact include and account for Plaintiff's limitations. ALJ Furcolo followed the required psychiatric review technique as laid out by the Regulations when analyzing Plaintiff's mental impairments. (Doc. 14, p. 10.) Defendant argues that the ALJ supplemented each conclusion of mild or moderate impairments with complete references to the hearing testimony, medical record, and medical opinions—including Dr. Corey's. (Id. at pp. 10–11.) Then, when determining Plaintiff's RFC, ALJ Furcolo accounted for each impairment by limiting Plaintiff to "simple, routine tasks" and occasional interaction with supervisors, co-workers, and the public. (Id. at p. 9.) Defendant contends that the ALJ may not have provided an "explicit recitation of the ratings" for which the limitations correspond, but

5

he was not required to do so. (Id. at p. 11.) Furthermore, Defendant argues that the ALJ's limitations were appropriate according to "the [R]egulations, SSR 96-8p and case law." (Id. at pp. 10.)

A RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p. "An ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability." Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007). The final determination of a plaintiff's RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d) & (e)(2).

In finding that Plaintiff had the RFC to perform a full range of work at all exertional levels, but limited to simple, routine tasks, the ALJ stated he considered all symptoms and the extent those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. (Doc. 8-2, pp. 29–30.) ALJ Furcolo found the medical evidence revealed Plaintiff's affective/mood disorder but not her narcolepsy. (Id. at pp. 28, 30.) The ALJ also determined that Plaintiff's allegations as to the intensity, persistence, and limiting effects of her affective/mood disorder symptoms were not in agreement with the evidence of record. (Id. at p. 30.)

In making his determination regarding Plaintiff's narcolepsy claims, ALJ Furcolo looked to summary notes from the Woodman Community Clinic and other medical evidence of record. He noted that the diagnosis "appears based solely upon claimant's assertion", as Woodman Community Clinic was the only one that diagnosed Plaintiff with narcolepsy. (Id. at p. 28.) In fact, the ALJ observed that, during Plaintiff's August 2013 hospitalization, the records read, "[Plaintiff's] symptomology was not compatible with narcolepsy as she just states that she

6

sleeps a lot for escape." (Id.) No other findings, exams, or tests support Plaintiff's narcolepsy claims.

As for Plaintiff's affective/mood disorder, the ALJ looked to Plaintiff's history of inpatient mental health hospitalizations in 2007 and 2010, which were prior to the alleged onset date. However, the ALJ noted that Plaintiff's earnings statements indicated that she was still "able to work at significant levels through 2013" despite her hospitalizations. (Id. at p. 30.) In March of 2013, Plaintiff saw Dr. Scott Tarplee for her anxiety. Dr. Tarplee diagnosed her with situational anxiety but indicated that Plaintiff could return to work in a few days. (Id.)

In July of 2013, Plaintiff received emergency room treatment for stress, depression, and hypotension. (Id.) Plaintiff was placed on an involuntary hold and transferred to Satilla Community Services. Both Satilla and Gateway Behavioral Health, where Plaintiff was later evaluated, diagnosed Plaintiff with major depressive disorder of varying degrees. (Id. at p. 31.)

In August of 2013, Plaintiff was taken to the emergency room for an attempted suicide. (Id.) Another involuntary hold was initiated, and Plaintiff was transferred to Georgia Regional Hospital. The ALJ looked to the hospital's treatment notes, which indicated that on admission, Plaintiff "stated that her suicidal gesture was a 'final way to get her mother's attention[ ]'. . . [and] that she was 'not really suicidal.'" (Id.) Georgia Regional diagnosed Plaintiff with "major depressive disorder, recurrent; anxiety disorder NOS; and borderline personality disorder." (Id.) However, Plaintiff's mood and behavior improved with medication and treatment.

Plaintiff had a consultative examination with Dr. Corey on October 12, 2013. The ALJ noted that Dr. Corey indicated Plaintiff's "[m]ental status exhibited increased range and intensity of affect, moderately impaired attention and concentration, and impaired memory." (Id.) Additional testing indicated that she had moderate difficulty in occupational functioning.

However, Dr. Corey also indicated that, while Plaintiff had moderate impairments in her working memory and concentration, her "capability to interact appropriately is not particularly impaired." (Id.) The ALJ then specifically indicated that he afforded Dr. Corey's opinion "great weight because it is based on an examination of the claimant and is consistent with the other medical evidence of record." (Id.)

ALJ Furcolo then looked to the diagnoses, mental RFC assessment, and psychological review technique form from Dr. Cooper—from whom Plaintiff received treatment between January and May of 2014. (Id. at p. 32.) However, the ALJ specifically explained that he accorded the RFC assessment and psychological review technique form little weight for two reasons. First, "the restrictions contained in the medical evidence of Record are inconsistent with the findings in his treatment notes and the generally normal findings on the mental status examinations." (Id.) Second, ALJ Furcolo noted that, while Dr. Cooper alleges in his psychological review technique form that Plaintiff meets the list for personality disorder, Dr. Cooper "never diagnosed the claimant with a personality disorder." (Id.)

The ALJ also referred to the initial psychological review technique and RFC analysis performed by the Disability Determination Service ("DDS"). Among other things, the consultant there found that Plaintiff could carry out simple through moderately detailed instructions but would need to write down more complex instructions. (Id.) She could pay attention for extended periods but with varying concentration. Additionally, Plaintiff could reasonably meet a regular workweek schedule but "may miss one day per month due to psychiatric symptoms." (Id.) The psychological consultant at the reconsideration level also affirmed the above-listed limitations. ALJ Furcolo indicated that he also accorded these opinions significant weight because they were consistent with the medical evidence and Dr. Corey's report.

8

The ALJ's determination that Plaintiff maintained the RFC to perform a full range of work at all levels is supported by substantial evidence. ALJ Furcolo looked at the objective medical and other evidence of record, as well as Plaintiff's subjective allegations. He explained why certain sources received less or more weight and accounted for Plaintiff's impairments with certain limitations set forth in his RFC assessment. The ALJ did all that was required of him, and, particularly given the standard of review at this stage, this enumeration of error is without merit.

## VI. Whether Substantial Evidence Supports the ALJ's Credibility Determination

Plaintiff asserts that the ALJ did not provide "explicit and adequate reasons for his credibility finding." (Doc. 11, p. 12.) She argues that the ALJ failed to articulate reasons for discounting Plaintiff's own statements and did not indicate that he had considered the entire case record. Specifically, Plaintiff argues that substantial evidence does not support the ALJ's credibility findings regarding her hospitalizations. (Id. at pp. 13–16.) Plaintiff contends that the ALJ did not explain why he found her testimony of suicidal ideations and the impact of her hospitalizations less credible. Furthermore, she argues that the ALJ did not evaluate her work history and daily activities appropriately.

Defendant avers that ALJ Furcolo allocated the appropriate weight because he was not "required to accept [Plaintiff's] subjective allegations of pains or other symptoms." (Doc. 14, p. 14.) He could, and did, look to other factors such as treatment history, medications, other measures used for relief of symptoms, and medical source opinions. (Id. at pp. 15–17.) After looking at these other factors, ALJ Furcolo found Plaintiff less than fully credible. He pointed to the inconsistencies between Plaintiff's earnings history and her complaints about being unable to

work, her extensive daily activities, and uncorroborated accounts of suicide attempts. (Id. at p. 16.)

In order to establish disability based on testimony of pain and other symptoms, a social security disability benefits claimant must show: (1) evidence of the underlying medical condition; and (2) either (a) objective medical evidence confirming severity of the alleged pain, or (b) that the objectively determined medical condition could reasonably be expected to give rise to the claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). If a plaintiff "testifies as to [her] subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir. 1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210–11 (quoting Foote, 67 F.3d at 1561).

ALJ Furcolo found Plaintiff's testimony was not fully credible concerning the severity of her symptoms and the extent of her limitations because the record did not support her symptoms and claimed limitations. Specifically, the ALJ noted that, despite her impairments, Plaintiff was able to "independently manage her own self-care and household chores," in addition to caring for six animals. (Doc. 8-2, p. 27.) Significantly, the ALJ observed that "no medical evidence of Record for the overwhelming majority of" Plaintiff's alleged suicide attempts existed to support Plaintiff's claims of a severely debilitating affective/mood disorder. (Doc. 8-2, p. 30.)

Furthermore, Plaintiff had an earnings history supporting significant work levels up until 2013, despite her hospitalizations beginning in 2007. In 2013, Dr. Tarplee noted that Plaintiff requested that she be allowed to work—belying her claims of disability. Additionally, ALJ Furcolo cited to Georgia Regional Hospital's admission notes indicating that "'she was not really suicidal' . . . and improved with medication and treatment." (Id. at p. 31.) ALJ Furcolo also included reports from Dr. Corey indicating that, despite Plaintiff's reported "panic-like episodes while asleep[,] . . . her mental status examination was normal." (Id.) Additionally, during the follow-up, Dr. Corey indicated that Plaintiff "had no concrete complaints, and her mental status examination was within normal limits with some underlying anxiety." (Id. at pp. 31–32.)

It is evident the ALJ did not find Plaintiff's allegations regarding disabling conditions to be credible, particularly because the ALJ concluded the record contradicted Plaintiff's allegations. ALJ Furcolo met the legal requirements as to his credibility findings, and Plaintiff offers no valid reason why this Court should reject those findings. This enumeration of error is also without merit.

## VII. Whether Substantial Evidence Supports the ALJ's Determination that Plaintiff Could Return to her Past Relevant Work

Plaintiff maintains ALJ Furcolo erred in finding that she could return to her past work because he omitted certain limitations. (Doc. 11, p. 7.) For example, Plaintiff cites to the vocational expert's answer in response to her attorney's hypothetical, that someone who "responded inappropriately to supervisors, coworkers, and the public . . . one-third[] of the time" would have difficulty maintaining employment. (Id. at p. 8.) Plaintiff contends that the ALJ should have included limitations for her inability to "respond appropriately" when determining whether she could return to her past work. Additionally, Plaintiff argues that, because the ALJ found that her borderline personality disorder was a severe impairment, the "finding that she

could perform her past work as a general clerk is unsupported." (Id.) Finally, Plaintiff argues that, while ALJ Furcolo gave great weight to the DDS consultant's analysis, he failed to include the fact that DDS also limited Plaintiff to unskilled work—of which, she argues, the general clerk position is not. (Id. at p. 9.)

Defendant responds that the ALJ did appropriately consider Plaintiff's limitations in determining whether she was able to return to her past relevant work. Although the ALJ may not have accounted for the specific limitation posed in Plaintiff's hypothetical question to the vocational expert, Defendant contends that ALJ Furcolo was not required to do so. (Doc. 14, p. 6.) In fact, Defendant argues that Plaintiff's attorney's "hypothetical assumption of an individual who frequently . . . responds inappropriately is unsupported by the record, [and thus] the ALJ was not required to accept the [vocational expert's] response" that this hypothetical individual would not be able to maintain a job. (Id. at p. 7.) Furthermore, Defendant maintains that, by limiting Plaintiff to only occasional interaction with supervisors, co-workers, and the public, ALJ Furcolo appropriately accounted for Plaintiff's limitations. Defendant also argues that the ALJ was not required to affirm "each and every aspect" of the DDS consultant's opinion. (Id.) Instead, the ALJ considered all the evidence and determined that, "despite her mental limitations, Plaintiff could still perform her past relevant work as a general clerk, which the ALJ correctly noted was semi-skilled." (Id. at p. 8.)

To support a finding that the claimant is able to return to her past relevant work, the ALJ must: (1) consider all the duties of that work, and (2) evaluate the claimant's ability to perform them in spite of her impairments. Klawinski v. Comm'r of Soc. Sec., 391 F. App'x 772, 775 (11th Cir. 2010) (citing Lucas v. Sullivan, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990)). A claimant seeking disability benefits bears the burden of proving that she cannot perform her past

relevant work either as she performed it or as it is generally performed in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1560(b)(3). "If the ALJ finds that the claimant cannot perform the functional demands and duties of her past job as she actually performed it, he will consider whether the claimant can perform the functional demands and duties of the occupation as generally required by employers throughout the national economy." Scharber v. Comm'r of Soc. Sec., 411 F. App'x 281, 282 (11th Cir. 2011) (citing SSR 82–61, 1982 WL 31387 (1982)).

The ALJ may consider the testimony of a vocational expert in determining whether the claimant still possesses the ability to perform her past relevant work. 20 C.F.R. § 404.1560(b)(2). "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." Waldrop v. Comm'r of Soc. Sec., 379 F. App'x 948, 952 (11th Cir. 2010) (citing Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004)). Through the use of vocational expert testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, No. 97-C-1548-N, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

Here, Plaintiff's past job as a general clerk is considered light, semi-skilled work, with a specific vocational performance ("SVP") of 3 under the Dictionary of Occupational Titles.[1] (Doc. 8-2, pp. 33, 86.) Before making his determination regarding Plaintiff's ability to perform her past work, ALJ Furcolo compared Plaintiff's RFC with the physical and mental demands of

---

[1] ALJ Furcolo's misclassification of the general clerk's SVP as 2, rather than 3, was likely a scrivener's error. Immediately afterwards, he correctly described the skill-level of the general clerk position.

13

the job.  (Id.)  His RFC assessment found, among other things, that Plaintiff's "capability to interact appropriately is not particularly impaired," and that she "can carry-out simple through moderately detailed instructions."[2]  (Id. at pp. 31–32.)  ALJ Furcolo's hypothetical included those limitations and all other limitations the ALJ determined to be supported by the evidence of record.  The vocational expert described the SVPs of several of Plaintiff's other previous jobs, but he testified to ALJ Furcolo that "an individual with the claimant's age, education, work experience, and residual functional capacity . . . would be able to perform the requirements of the general clerk."  (Doc. 8-2, p. 33.)  Based on the vocational expert's testimony, the relevant medical records, other evidence of record, and his RFC assessment, ALJ Furcolo found that Plaintiff could work as a general clerk as it is actually and generally performed.  (Id.)  Accordingly, substantial evidence supports the ALJ's determination, and this enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner.  I also **RECOMMEND** that the Court **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28

---

[2] Plaintiff argues that, because ALJ Furcolo gave great weight to the DDS's RFC assessment, he must also accept the evaluation DDS made when they determined that Plaintiff was limited to unskilled work. (Doc. 11, pp. 8–9.)  However, Plaintiff excludes the fact that the DDS consultant also noted on the same page that "[a] finding about the capacity for past relevant work has not been made.  However, this information is not material because all potentially applicable, medical vocational guidelines would direct a finding [of] 'not disabled', given the claimant's age, education, and RFC.  Therefore, the claimant can adjust to other work."  (Doc. 8-3, p. 13.)

U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of September, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA